**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
Baltimore Division

| | |
|---|---|
| MULTI-STATE PARTNERSHIP FOR PREVENTION, LLC, a Maryland Entity,<br><br>    Plaintiff,[1]<br><br>v.<br><br>SAMUEL KENNEDY, an individual,<br>    Defendant,[2]<br><br>v.<br><br>KENNEDY TECHNOLOGIES MK,<br>    Defendant,<br><br>v.<br><br>KENNEDY TECHNOLOGY, LLC, a New York Entity,<br>    Defendant. | Civil Action No. 1:23-cv-694-RDB<br><br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

  Plaintff, MULTI-STATE PARTNERSHIP FOR PREVENTION, LLC ("***MSPP***"), by and through undersigned counsel, files this First Amended Complaint suing Defendants, SAMUEL KENNEDY, KENNEDY TECHNOLOGY MK, and KENNEDY TECHNOLOGY, LLC, where

---

[1] 1 Reservoir Cir; Ste 101, Pikesville, MD 21208 (Baltimore County).

[2] Upon information and belief, all Defendants located at:  328 Henry Street, Bethpage, New York 11714 (Nassau County).

Newman Law Offices
1717 K Street, NW; Suite 900
Washington, DC  20006
(202) 544-8040

1

MSPP seeks declaratory relief and damages arising out of contract and various intentional torts, including trademark infringement, whereby MSPP alleges the following:

## I.   PRELIMINARY STATEMENT

On March 11, 2020, the World Health Organization declared the then-novel coronavirus (COVID-19) outbreak a global pandemic.  MSPP, a 100% minority-owned business, was well-positioned to deal with the pandemic response by providing software that would help automate key aspects of delivering mass vaccination in various clinical and non-clinical settings. Specifically, MSPP had conceived of said software, a preparedness module, i.e., PrepMod, which was to become an evolution of companion software MSPP already owned and operated, ReadiConsent ("*RC*") and ClinicWizard ("*CW*").

To enhance such novel software, MSPP engaged and provided to the Defendants the code to RC and CW.  The Parties came to an agreement where Defendants knew MSPP would be licensing any resulting software to various health departments around the United States. Defendants also knew that time was of the essence, and they communicated same to a referring party who would be financially invested in any payments MSPP made.  Defendants breached their agreement by not providing a functional software—within the agreed timeframe or ever—and quit without a transition when Defendants knew MSPP was trying to close license agreements to meet the time-sensitive nature of confirmed and prospective clients responding to the pandemic. Notwithstanding, Defendants then demanded significantly more than was agreed, and even the referring, financially-invested party advised MSPP not to pay!

Eighteen months after quitting, Defendants obtained a copyright registration.  Six months later, they sent substantively identical cease and desist demands to five different licensees of MSPP

Newman Law Offices
1717 K Street, NW; Suite 900
Washington, DC  20006
(202) 544-8040

2

alleging copyright infringement against it and its licensees. Four months later, MSPP learned of at least one said demand. The software, entitled PrepMod, is the subject of this suit for declaratory relief pursuant also to 28 U.S.C. §§ 2201 and 2202 (the "*Declaratory Judgment Act*") and contract and intentional tort claims, including trademark infringement.

## II.     PARTIES

1.     Plaintiff, MULTI-STATE PARTNERSHIP FOR PREVENTION, LLC, is an entity consisting of a single member, Tiffany Tate, organized under the laws of the State of Maryland, and headquartered therein in Baltimore County ("*MSPP*").

2.     Defendant, SAMUEL KENNEDY, is an individual citizen and upon information and belief, is domiciled in the State of New York ("*Kennedy*").

3.     Upon information and belief, Defendant, KENNEDY TECHNOLOGY MK, is a partnership based both in New York, New York, and Struga, Macedonia ("*KTech*").

4.     Defendant, KENNEDY TECHNOLOGY, LLC, is an entity organized under the laws of the State of New York and headquartered therein in Nassau County ("*KTech, LLC*").

5.     Defendants Kennedy, KTech, and KTech, LLC shall collectively also be known as "*Software Developers*," and Defendants and MSPP shall be known as the "*Parties*."

## III.    JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338 because it involves federal questions arising under the Copyright Act, as amended, 17 U.S.C. § 101 *et seq*. (the "*Copyright Act*") and the Lanham Act, as amended, 15 U.S.C. § 1051 *et seq*. (the "*Lanham Act*"). This Court has supplemental jurisdiction over any state law claim pursuant to 28 U.S.C. § 1367(a).

Newman Law Offices
1717 K Street, NW; Suite 900
Washington, DC 20006
(202) 544-8040

7.       Additionally, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) and (c), as there is complete diversity of citizenship between MSPP and the Defendants, and the amount in controversy exceeds seventy-five thousand dollars ($75,000).

8.       This Court has personal jurisdiction over Defendants because they engaged in acts within the State of Maryland by, *inter alia*, contracting to supply services for a Maryland entity, MSPP and providing same including by, *inter alia*, repeatedly directing electronic activity, including computer information, into Maryland or knowing that electronic activity, including computer information, would get repeatedly directed thereto, thus implicating at least subsections one and two of Maryland's long arm statute. ***See* MD. CODE ANN. § 6-103(b)(1-2)**.

9.       Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the matters about which MSPP complains occurred and is continuing to occur in this judicial District and specifically, within this Division, including Defendants knowingly and intentionally representing to at least one third party that it and its licensor had committed, *inter alia*, copyright infringement, conduct Defendants knew would cause harm within this District and specifically, within this Division (including at least tortious interference of a contract and economic expectancy). ***See id.*** at § 6-103(b)(3).

## IV.   FACTS COMMON TO ALL COUNTS

10.      On March 4, 2020, a third-party software developer, Joe Austin, a colleague of both Ms. Tate and Kennedy, introduced them to each other, whereby MSPP and Defendants would later set an electronic meeting entitled "Software Enhancements."

11.      Unknown to MSPP, Mr. Austin was to receive a ten percent (10%) commission on all receipts to Defendants arising out of the introduction between MSPP and Defendants.

Newman Law Offices
1717 K Street, NW; Suite 900
Washington, DC 20006
(202) 544-8040

4

12.    On March 10, 2020, with Ms. Tate in Maryland and Kennedy potentially in Macedonia, the Parties met electronically, and MSPP gave Defendants access to at least the code to companion software MSPP created in 2017, owned, operated, and in use known as ReadiConsent ("*RC*") and ClinicWizard ("*CW*"), whereby Defendants acknowledged receipt of said code.

13.    On said date, MSPP also gave Defendants a prototype of PrepMod.

14.    On March 13, 2020, MSPP provided Defendants a list of "enhancements" to existing said code, especially to fortify it so that it could accommodate the anticipated demand produced by COVID.

15.    On March 13, 2020, Kennedy confirmed to Mr. Austin what Defendants had outlined to MSPP during the March 10, 2020, meeting what the expected terms would be:  $7,500 per week where the majority of the work would be completed in the first four weeks and the remaining four to six weeks would be for refinement.

16.    The Parties knew that to build a system like PrepMod from scratch would take approximately nine (9) months.

17.    On March 26, 2020, the Parties had a meeting entitled "CW 2.0," where they came to an oral agreement as to its terms:

(i)    Defendants would use a nine-member team to enhance CW and RC whereby major functionality would be working by April 20, 2020 ("*First Stage*");

(ii)    MSPP would pay Defendants $7,500 per week for each week through the First Stage;

(iii)    After the First Stage, a smaller team would perform refinements and fix bugs for the two to four weeks thereafter ("*Second Stage*");

Newman Law Offices
1717 K Street, NW; Suite 900
Washington, DC  20006
(202) 544-8040

5

(iv)    MSPP would pay Defendants some amount such that the total amount for the First and Second Stages would not exceed $45,000.

(v)    The Parties agreed that Defendants would complete the work no later than eight weeks since MSPP explained, and thus Defendants knew that MSPP would be licensing the software (as a function of the work from the First and Second Stages) to various health departments around the United States.

18.    On March 26, 2020, MSPP stated that it would send Kennedy a proposed written contract, but Kennedy responded that he wanted to use his contract since he stated that it was likely more comprehensive or more robust for the Parties' purpose.

19.    After MSPP again requested a copy of the proposed written contract, on March 31, 2020, Kennedy wrote to MSPP that he would send it.

20.    Upon engagement with MSPP, Defendants insisted on transferring MSPP's existing code—created by the team that was working in parallel with Defendants—into GitHub, a third-party, secure platform and cloud-based service for software development, where developers store and edit code resulting in time-stamped files and software.

21.    Beginning in March and April, 2020, Defendants worked with MSPP's developers on the development of code.

22.    At all times relevant, when any developer working on code situated on GitHub would make an edit, all of the developers, including Defendants, knew that all edited code and any attendant file would eventually get transmitted and delivered to MSPP, which is situated in Maryland.

Newman Law Offices
1717 K Street, NW; Suite 900
Washington, DC  20006
(202) 544-8040

6

23.     Just prior to April 22, 2020, MSPP again requested a copy of the proposed contract, and on said date, Defendants responded that they would send the contract, but at all times during their relationship, Defendants never sent MSPP a contract.

24.     After repeated requests, on May 1, 2020, KTech sent to Ms. Tate a first invoice of $15,000, and on May 5, 2020, KTech acknowledged MSPP had paid it in full.

25.     In May and June, 2020, Kennedy represented to multiple third parties and to MSPP that it (MSPP) owned the copyright to any work that Defendants had created.

26.     In at least May, 2020, Kennedy consulted with MSPP on pricing PrepMod for its potential sale from MSPP to CDC.

27.     From April to July, 2020, MSPP:

(i)     Complained to Defendants of the lack of functionality of the software, the urgency to resolve expeditiously, and requesting at least three times that if Defendants would simply disclose if they could not do the job, then MSPP would "bring in extra help;"

(ii)    Requested repeatedly from Defendants invoices.

28.     On August 3, 2020, KTech sent Ms. Tate a second invoice for $105,000 with a discount of $45,000 that totaled $60,000.

29.     On August 16, 2020, Defendants, via GitHub, gave to MSPP a final copy of the work they had completed.

30.     On August 17, 2020, KTech sent Ms. Tate a third invoice for $15,000, and MSPP paid it by wire on August 19, 2020.

Newman Law Offices
1717 K Street, NW; Suite 900
Washington, DC 20006
(202) 544-8040

7

31.    On August 19, 2020, Defendants "decided to end the participation . . . in the project . . . [where MSPP then] could begin or accelerate efforts to find [] engineering talent," i.e., software developers, but that Defendants would continue working during a transition.

32.    On August 20, 2020, when Defendants quit without any transition, the software that they had created was not functional.

33.    Only after Defendants voluntarily quit was MSPP forced to engage other software developers to remedy the non-functional software.

34.    From April until August 16, 2020, Defendants delivered code (and software), albeit non-functional, to MSPP without imposing any limitations on its use.

35.    On August 23, 2020, after Defendants had voluntarily quit (and after having delivered a final copy), Kennedy, in his name only, sent to MSPP an unexecuted assignment of copyright, the first time any of the Defendants had submitted same.

36.    In August, 2020, Mr. Austin, who at that time was then apprised of what occurred between MSPP and Defendants (and who had not yet disclosed his financial interest in any payments Mr. Austin would receive from any of the Defendants), instructed MSPP *not* to pay Defendants' second invoice.

37.    Upon information and belief, sometime after April 1, 2020 but much prior to April 23, 2022, in acknowledging a work for hire relationship, Defendants publicized that:

> At the start of the COVID-19 pandemic, Kennedy Technology was hired by a proven provider of healthcare solutions to create a software package in anticipation of the need to vaccinate all Americans against COVID-19. The software was designed to allow for the rapid and efficient distribution of vaccines to all Americans, and to allow for the tracking of vaccine distribution and administration. It included a patient management system for in-clinic use, and a public engagement system for scheduling appointments and searching for vaccination locations.

Newman Law Offices
1717 K Street, NW; Suite 900
Washington, DC  20006
(202) 544-8040

8

> The software solution went on to be deployed by the Departments of Health of over 15 U.S. states, including Washington, California, Colorado, Virgina [sic], and Maryland.

38.     With priority to at least November 18, 2020, MSPP obtained trademark registration, U.S. Patent and Trademark Office No. 6461613, of and for 'PrepMod.'

39.     Claiming a first publication on April 1, 2020, the U.S. Copyright Office awarded to a copyright claimant[3] a copyright registration for a computer program entitled 'PrepMod' from a deposited work, Registration No. TX 9-113-201, effective April 23, 2022. ***See* PL.'S EX. A;**[4] *see also* **PL.'S EX. B** (certified copy of same) (collectively, the "***Work***").

40.     On October 13, 2022, Kennedy, who claimed ownership of the Work, through counsel, sent attaching Plaintiff's Exhibit A a cease and desist letter to a city-department of health, knowingly and intentionally interfering with the contractual relations between said department and MSPP.  ***See* PL.'S EX. C.**

41.     On October 13-14, 2022, Kennedy submitted four other letters identical or substantially identical to Plaintiffs Exhibit C to two state departments of health, a county department of health (in a different state), and a health system (in yet another state).

42.     Additionally, Kennedy made multiple misrepresentations in said cease and desist letter including, *inter alia*, that:

    a.     Defendants had developed a software application with all requested functionality when it was non-functional at all times relevant;

---

[3] Kenedi Tehnolodjis DOOEL uvoz-izvoz Struga.

[4] All exhibits herein track and are incorporated by reference from the original complaint. ***See* DKT. NO.S 1-1 to 1-4**.

Newman Law Offices
1717 K Street, NW; Suite 900
Washington, DC 20006
(202) 544-8040

9

b.      MSPP had severed all business relations with Defendants even though they quit, refused any transition, and Kennedy refused to engage MSPP;

c.      MSPP "had acquired no intellectual property rights to PrepMod;"

d.      MSPP and its licensees were engaging in copyright infringement; and

e.      That Defendants could simply provide a license to use PrepMod.

43.     PrepMod is software as a service ("**SAAS**") and requires infrastructure, hosting, scaling, updating and maintenance, and integration.

44.     SAAS and is not akin to giving someone a floppy or compact disc who could then run it.

45.     PrepMod requires approximately thirty (30) people to run it as a SAAS.

46.     In February, 2023, MSPP learned of Plaintiffs Exhibit C.

47.     An actual case or controversy exists between MSPP and Defendants in that at least Kennedy claims ownership to the Work and has alleged—and will continue to allege—to third parties that Defendants, in any permutation, own the Work, that it is valid and enforceable against MSPP, and even if true, that MSPP does not have an implied license.

## V.      COUNTS OF THE COMPLAINT

### COUNT I
### INVALIDITY OF COPYRIGHT
(AGAINST DEFENDANTS)

48.     Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 47 as if fully stated herein.

49.     This is a declaratory judgment action under the Copyright Act and the Declaratory Judgment Act.  As an actual justiciable controversy exists by way of the credible threat of

Newman Law Offices
1717 K Street, NW; Suite 900
Washington, DC  20006
(202) 544-8040

10

immediate litigation and demand to cease and desist MSPP's and any licensee's use of the Work, MSPP seeks relief from this Court.

50.     In publicizing that Defendants were "hired by a proven provider of healthcare solutions," i.e., MSPP (and its operational software RC and CW), Defendants admitted by omission that they did not own the copyright because if they did, they would have publicly represented same with alacrity.

51.     Only after Defendants quit and the relationship ended did the issue of copyright ownership and infringement occur.

52.     Defendants knew at least on and before August 20, 2020, that they did not own the Work.

53.     Defendants committed a fraud upon the U.S. Copyright Office in registering for and obtaining a copyright in the Work.

54.     MSPP requests an order declaring that the Work is invalid and unenforceable.

COUNT II
**NON-INFRINGEMENT OF COPYRIGHT**
(AGAINST DEFENDANTS)

55.     Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 51 as if fully stated herein.

56.     This is a declaratory judgment action under the Copyright Act and the Declaratory Judgment Act.   As an actual justiciable controversy exists by way of the credible threat of immediate litigation and demand to cease and desist MSPP's and any licensee's use of the Work, MSPP seeks relief from this Court.

Newman Law Offices
1717 K Street, NW; Suite 900
Washington, DC  20006
(202) 544-8040

11

57.     In publicizing that Defendants were "hired by a proven provider of healthcare solutions," i.e., MSPP (and its operational software RC and CW), Defendants admitted by omission that they did not own the copyright because if they did, they would have publicly represented same with alacrity.

58.     Only after Defendants quit and the relationship ended did the issue of copyright ownership and infringement occur.

59.     Defendants knew at least on and before August 20, 2020, that they did not own the Work.

60.     Defendants, who have the same counsel as the copyright claimant, knew or had to have known that on April 23, 2022, Defendants had at most, *arguendo*, a breach of contract claim and could never have a claim for copyright infringement even if assuming, *arguendo*, Defendants validly owned the Work.

61.     Defendants committed a fraud upon the U.S. Copyright Office[5] in registering for and obtaining a copyright in the Work.

62.     MSPP is entitled to declaratory judgment that it is not infringing, has not infringed, and is not liable for infringing any valid copyright owned by any of the Defendants, in any permutation, concerning the Work, either directly or by inducing others to infringe or by contributing to infringement by others.

---

[5] *See* **PL.'S EX. D** (Form AO121: Report on the Filing or Determination of Action to the U.S. Copyright Office).

Newman Law Offices
1717 K Street, NW; Suite 900
Washington, DC 20006
(202) 544-8040

## COUNT III
### BREACH OF CONTRACT
(AGAINST DEFENDANTS)

63.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 59 as if fully stated herein.

64.    Defendants, in any permutation, entered into a valid agreement with MSPP on or around March 26, 2020 as defined in at least Paragraph 17.

65.    In the alternative, the Parties entered into an implied-in-fact contract whereby the Defendants would produce a functional software within approximately eight (8) weeks where the Parties knew that time was of the essence and where MSPP would pay Defendants an agreed amount not to exceed a threshold, $45,000.

66.    MSPP paid two invoices, but did not pay another, i.e., the second invoice, that was inconsistent with the Parties' agreement.

67.    MSPP tried to engage Defendants concerning said second invoice, but Defendants refused.

68.    Defendants breached their agreement by not providing a functional software—within the agreed timeframe or ever—and quit without a transition when Defendants knew MSPP was trying to close license agreements to meet the time-sensitive nature of confirmed and prospective clients responding to the pandemic.

69.    As a direct and proximate cause of Defendants' breach of contract, MSPP suffered damages in the amount much greater than seventy-five thousand dollars ($75,000).

Newman Law Offices
1717 K Street, NW; Suite 900
Washington, DC 20006
(202) 544-8040

13

## COUNT IV
### TORTIOUS INTERFERENCE OF CONTRACTUAL RELATIONS
(AGAINST DEFENDANTS)

70. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 69 as if fully stated herein.

71. Defendants knew at least on and before August 20, 2020, that they did not own the Work.

72. Defendants, who have the same counsel as the copyright claimant, knew or had to have known that on April 23, 2022, Defendants had at most, *arguendo*, a breach of contract claim and could never have a claim for copyright infringement even if assuming, *arguendo*, Defendants validly owned the Work.

73. Defendants committed a fraud upon the U.S. Copyright Office in registering for and obtaining a copyright in the Work.

74. Defendants also engaged in actual malice and a sense of conscious and deliberate wrongdoing, evil or wrongful motive with an intent to injure, with ill will, to interfere with a contract and economic expectancy by transmitting to at least one third party (as found in Plaintiff's Exhibit C) a cease-and-desist letter when Defendants had no right to do so and was, at the least, improper.

75. Defendants knew MSPP was in valid contractual relations and had a valid economic expectancy with said third party.

76. As a result of Defendants' transmitting said letter, said third party no longer wished to engage MSPP in contractual relations and the business relationship due to Defendants' intentional interference.

Newman Law Offices
1717 K Street, NW; Suite 900
Washington, DC 20006
(202) 544-8040

14

77.     As a direct and proximate cause of Defendants' intentional tort against MSPP, it suffered damages in an amount much greater than seventy-five thousand dollars ($75,000).

## COUNT V
### DEFAMATION
(AGAINST DEFENDANTS)

78.     Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 77 as if fully stated herein.

79.     Defendants knew at least on and before August 20, 2020, that they did not own the Work.

80.     Additionally, besides other misrepresentations that Defendants made (as stated in Paragraph 42), they knew or were on notice that MSPP had intellectual property rights in PrepMod.

81.     Via their cease and desist letters, Defendants made multiple defamatory statements to third parties.

82.     Defendants knew said statements were false.

83.     Defendants were legally at fault in making said statements.

84.     As a result of Defendants' transmitting said letter, said third party (as found in Plaintiff's Exhibit C) no longer wished to engage MSPP in contractual relations and the business relationship due to Defendants' defamation.

85.     As a direct and proximate cause of Defendants' intentional tort against MSPP, it suffered damages in an amount much greater than seventy-five thousand dollars ($75,000).

Newman Law Offices
1717 K Street, NW; Suite 900
Washington, DC  20006
(202) 544-8040

15

Newman Law Offices
1717 K Street, NW; Suite 900
Washington, DC  20006
(202) 544-8040

## COUNT VI
### TRADEMARK INFRINGEMENT
(AGAINST DEFENDANTS)

86.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 62 as if fully stated herein.

87.    MSPP first used the mark, PrepMod, in commerce by at least April, 2020.

88.    Defendants, without MSPP's consent, has represented to third parties that they own PrepMod.

89.    Defendants' use of this mark, PrepMod, is likely to cause, and has caused, confusion, mistake, and deception as to the source and ownership of PrepMod

90.    Defendants' actions constitute trademark infringement under the Lanham Act.

91.    As a direct and proximate result of Defendants' infringement of MSPP's mark, PrepMod, MSPP has suffered damages in an amount to be proven at trial.

92.    As a result of the Defendants' actions, MSPP has suffered, and will continue to suffer, irreparable harm unless the Defendant is enjoined by this Court.

## VI.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment, *inter alia*:

A.    Declaring that Plaintiff's conduct as alleged herein or as may be proved at trial does not violate the Copyright Act;

B.    Declaring that the Work is invalid and unenforceable;

16

C.      Declaring that the imposition of a Constructive Trust on the Work in favor of MSPP is warranted;

D.      In the alternative, declaring that MSPP has and had an implied license;

E.      Declaring that Plaintiff's conduct as alleged herein or as may be proved at trial does not violate Maryland statutory and common laws;

F.      Declaring that Plaintiff's conduct as alleged herein or as may be proved at trial does not violate any other laws alleged or claimed by Defendants;

G.      Enjoining and restraining, temporarily, preliminarily and permanently, Defendants and their agents, representatives, heirs, assigns, and attorneys, and all other persons active for, with, by, through or under authority from Defendants, or in concert or participation with Defendants, from continued acts of, *inter alia*:

(i)     Claiming ownership to the Work;

(ii)    Alleging infringement of the Work by MSPP or any licensee, prospective or otherwise;

H.      Awarding to MSPP

1.  Actual damages;

2.  Consequential damages;

3.  Punitive damages;

4.  Awarding attorney's fees, costs and expenses; and

I.      Award such further relief as this Court deems equitable and just.

Newman Law Offices
1717 K Street, NW; Suite 900
Washington, DC  20006
(202) 544-8040

17

## VII.   JURY DEMAND

MSPP demands a trial by jury on all issues so triable.

Respectfully submitted,

NEWMAN LAW OFFICES

By:  __/s Howard A. Newman/__
Howard A. Newman, Esq.
Bar No. 29003
1717 K Street, NW; Suite 900
Washington, DC  20006
(202) 544-8040
F:  (866) 544-8040
howard@newmanlawoffices.com

*Counsel for Plaintiff, Multi-State Partnership for Prevention, LLC*

Dated:  July 27, 2023.

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this  __27th__  day of July, 2023, a true and correct copy of the foregoing has been furnished by CM/ECF to all parties of record, including**:**

| James J. Schaller, Esq. | Peter Brown, Esq. | Kathleen R. Fitzpatrick, Esq. |
|---|---|---|
| SCHULMAN BHATTACHARYA, LLC | PETER BROWN & ASSOCIATES PLLC | KRF LEGAL |
| 6116 Executive Blvd. Suite 425 | 260 Madison Avenue 16th Floor | 249 Smith St. No. 118 |
| North Bethesda, MD 20852 | New York, NY 10016-2400 | Brooklyn, NY 11231 |
| (240) 356-8550 | (212) 939-6440 | (917) 475-6760 |
| jschulman@schulmanbh.com | pbrown@browntechlegal.com | kathleen@krflegal.com |

<em>Counsel for Defendants, Samuel Kennedy, Kennedy Technologies MK and Kennedy Technology, LLC</em>

__/s Howard A. Newman/__
Howard A. Newman, Esq.

18