UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MARYLAND

---------------------------------------------------------x
MULTI-STATE PARTNERSHIP        )
FOR PREVENTION, LLC            )
                               )
       Plaintiff            )
-against-                      )
                               )  Civil Action No. 23-cv-00694-RDB
                               )
SAMUEL KENNEDY,                )
KENNEDY TECHNOLOGY MK,         )
and KENNEDY TECHNOLOGY, LLC    )
                               )
       Defendants           )
                               )
---------------------------------------------------------x

**MEMORANDUM OF LAW FURTHER SUPPORTING
DEFENANTS' MOTION TO DISMISS**

Defendants Samuel Kennedy, Kennedy Technology MK, and Kennedy Technology, LLC, respectfully submit this reply memorandum further supporting their motion to dismiss the Amended Complaint, filed July 27, 2023 (ECF Doc. #22), pursuant to the Federal Rules of Civil Procedure 12(b)(2), (3), and (6), and, in the alternative, to transfer venue to the Eastern District of New York under 28 U.S.C. § 1406.

## PRELIMINARY STATEMENT

MSPP's response to Defendants' Motion to Dismiss raises incomplete defenses which are inconsistent with prevailing law and offers misinterpretations of the undisputed facts. MSPP's "multiple claims" are directed at Kennedy and KTMK; none involve Kennedy Tech,[1] and MSPP concedes this Court may dismiss the Amended Complaint as against it. MSPP further concedes certain jurisdictional arguments and Lanham Act claims by failing to respond to them. MSPP cannot meet its jurisdictional burden here, and even if it could, the Amended Complaint does not state a single viable claim. This Court may easily dismiss the Amended Complaint, *with prejudice*, or transfer this case to the Eastern District of New York in the interests of justice.

## I.  ARGUMENT

**A.  MSPP HAS NOT ESTABLISHED ITS *PRIMA FACIE* BURDEN FOR PERSONAL JURISDICTION**

### 1. *Defendants did not transact business in Maryland*

MSPP contends Mr. Kennedy and KTMK transacted business in Maryland pursuant to § 6-103(b)(1) because **(1)** Mr. Kennedy and Ms. Tate twice exchanged emails about a contemplated contract; **(2)** Mr. Kennedy "solicited" business from MSPP; and **(3)** Mr. Kennedy and/or KTMK engaged in purposeful activity in Maryland by (i) emailing invoices to MSPP and (ii) communicating to a non-party Maryland LLC. None of these arguments has merit.

---

[1] Unless otherwise stated, defined terms set forth in Defendants' opening brief shall have the same meaning herein.

First, MSPP mischaracterizes Defendants' arguments regarding contract negotiations. Defendants' brief explained that one of the factors courts consider when assessing jurisdiction under § 6-103(b)(1) is whether the parties engaged in extensive contract negotiations. (Mem. at 8.) Defendants posit the discussions between Ms. Tate and Mr. Kennedy do not constitute "extensive negotiations." The record is clear that neither party insisted on a contract: no contract was signed, and Mr. Kennedy terminated the relationship until several months later and for different reasons. (*See* Am. Compl. ¶¶ 18, 23, 34, 35; Kennedy Dec. ¶¶ 12, 15.)

Whether a contract was executed is of no moment to the jurisdictional analysis because the negotiations between the parties were not extensive. MSPP concludes Ms. Tate and Mr. Kennedy engaged in contract negotiations "over several weeks" presumably because the parties first contemplated a contract on March 26, 2020, and MSPP asked Mr. Kennedy to send a contract about a month later on April 22, 2020. (Opp. p. 9.) These two instances without more do not necessitate a conclusion that Mr. Kennedy and Ms. Tate were actively engaging in contract negotiations over several weeks. Ms. Tate now contends her preferred contract would have contained a Maryland forum selection clause, but nothing in the opposition or her declaration suggests she expressed that requirement to Mr. Kennedy. MSPP cannot expect this Court to enforce a secret forum selection clause for a contract that was never even presented.

Second, MSPP incorrectly claims Mr. Kennedy solicited business from MSPP. Mr. Kennedy explained he does not advertise in Maryland and that he had no prior dealings with Ms. Tate before non-party Joe Austin introduced them. (Kennedy Dec. at ¶ 11.) That MSPP later hired Mr. Kennedy does not change these facts. Ms. Tate's hearsay statement regarding the purported commission Mr. Austin receive also does not change this fact, even if it were admissible. *See* Fed. R. Evid. 801(c) and 802. (*See also* Tate Dec. ¶ 3.)

<u>Third</u>, none of the defendants engaged in purposeful activity within Maryland. MSPP cites no authority supporting its argument that the submission of three invoices over email or discussions with a non-party Maryland LLC constitutes "purposeful acts" *in Maryland* sufficient to confer jurisdiction under § 6-103(b)(1). Such conclusion would be nonsensical: any invoice emailed to a Maryland domiciliary from anywhere in the world would subject the sender to jurisdiction in Maryland. Ms. Tate's statement regarding non-party Lucky Rabbit LLC is equally unconvincing. Not only is the statement inadmissible hearsay, she provides no detail as the purported communications between Lucky Rabbit and Mr. Kennedy that could lead this Court to conclude Mr. Kennedy engaged in meaningful activity *in Maryland* within the meaning of the statute.

### 2. *<u>Defendants did not Contract to Supply Goods or Services in Maryland</u>*

MSPP misreads § 6-103(c) to conclude that this Court has jurisdiction over Defendants because Mr. Kennedy and/or KTMK directed electronic activity, including "computer information," to MSPP in Maryland. Under MSPP's interpretation of this provision, any party sending an email or other information over the internet to a Maryland resident is subject to jurisdiction here. This is fallacious. The statute states: "[t]he provisions of this section apply to computer information and computer programs *in the same manner* as they apply to goods and services." § 6-103(c)(2). In other words, computer information can form a jurisdictional basis, but the inquiry does not end there. MSPP must still show a causal link between the purported computer information and this lawsuit, which they cannot do.

To the extent MSPP contends this subsection applies because Mr. Kennedy and his team agreed to supply code for a computer program, MSPP still cannot show how its causes of action arise out of this transmission. As defendants explained in their opening brief: "MSPP's copyright

3

claims (Counts I and II) arise from Mr. Kennedy's valid copyright registration.[2]  The tortious interference, defamation, and Lanham Act claims (Counts IV, V, and VI) arise out of the cease-and-desist letters.  At most, this Court could only find the breach of contract claim (Count III) flows from the purported uploads." (Mem. at 12 (citations omitted).)  Defendants further argued that "[t]he breach of contract claim cannot survive on its own because the amount in controversy does not meet the minimum threshold of $75,000 set forth in 28 U.S.C. § 1332(a)." (Mem. at 12 n.3.)  MSPP's response does not address these points, and this Court may deem them conceded.  *See, e.g., Sigala v. Abrof VA, Inc.*, 15-CV-1779, 2016 U.S. Dist. LEXIS 55174, at *6 n.4 (D. Md. Apr. 21, 2016) (defendants conceded argument by failing to address it in opposing dismissal motion); *Md. Elec. Indus. Health Fund v. Mesco, Inc.*, 12-CV-505, 2014 U.S. Dist. LEXIS 25702, at *22-23 (D. Md. Feb. 28, 2014) (defendants conceded argument by failing to address it in summary judgment opposition);  *McKeel v. U.S.*, 178 F. Supp. 2d 493, 504 (D. Md. 2001) ("Plaintiff appears to concede this point, as he has failed to respond to the government's argument on this point.").

      The cases MSPP cites are easily distinguishable.  The Court in *Zippo Manufacturing Company v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (WD Pa. 1997), evaluated whether Pennsylvania had personal jurisdiction over a defendant California internet domain company which contracted with at least 3,000 Pennsylvania residents over state and federal trademark claims.  The District Court found that the defendant purposefully availed itself of the forum by virtue of its 3,000 Pennsylvania customers and that the trademark infringement action (involving the use of the trade name "zippo") arose from those contacts. *Id.* at 1126-1127.  In *Fidrych v. Marriot International, Inc.*, 952 F.3d 124 (4th Cir. 2020), the Fourth Circuit affirmed the South

---

[2] MSPP also later argues the conduct underlying its copyright claim occurred in the District of Columbia, not Maryland.  (*See* Opp. at 14-15.)

4

Carolina district court's dismissal for lack of personal jurisdiction, holding in part that defendant hotel operator's interactive website did not create sufficient contacts with the forum state because it did not target South Carolinians. *Id.* at 144. Here, although MSPP claims—without any specificity—that Mr. Kennedy and/or KTMK engaged with "multiple Maryland residents" (Opp. at 6), the Amended Complaint does not allege Mr. Kennedy has advertised or engaged in any business with any other Maryland residents not connected to the PrepMod project. And, as previously stated, the only possible cause of action related to Mr. Kennedy's dealings with the forum is the breach of contract claim, which on its own cannot confer subject matter jurisdiction under 28 U.S.C. § 1332(a). (*See* p. 4, *supra*.)

### 3. *This Court Lacks Jurisdiction over KTMK*

KTMK is a North Macedonian company that is not in privity with MSPP. (*See* Kennedy Dec. ¶¶ 7-10 (explaining the relationship between Mr. Kennedy and KTMK).) KTMK was a subcontractor to Kennedy and never had direct business contacts with MSPP. MSPP apparently argues that since KTMK has no presence in the United States, that the District of Maryland is a good a court as any to assert jurisdiction. The Amended Complaint does not allege MSPP had communication with any individual other than Mr. Kennedy, let alone any specific individual employed at KTMK in North Macedonia. MSPP contends that KTMK directed activity in Maryland to "multiple Maryland residents," but fails to identify a single one. (*See* Opp. at 12.) MSPP's dispute lies solely with Mr. Kennedy who is the current copyright owner and the sole business contact throughout the software development project.

### 4. *Jurisdiction in the District of Maryland is Not Constitutionally Reasonably*

Defendants argued in their opening brief that due process prevents this Court from exercising personal jurisdiction over them because **(1)** they did not purposefully avail themselves of the privilege of conducting business in Maryland; **(2)** five out of the six claims do not arise out

5

of Mr. Kennedy's tenuous contacts with the forum; and **(3)** personal jurisdiction is not constitutionally reasonable.  (*See* Mem. § III.A.3.)  MSPP ignores[3] all but one of these points: constitutional reasonableness.

MSPP next conclusorily argues jurisdiction in this District is reasonable because **(1)** KTMK is a foreign company with no United States presence; **(2)** Mr. Kennedy's temporary residence abroad negates traditional jurisdictional analysis; **(3)** Maryland has an interest because the transactions occurred in the state; and **(4)** MSPP has a significant interest in litigation where it resides.  Defendants do not agree that *any* transactions occurred within Maryland.  Not only was Mr. Kennedy a New York resident during 2020—when all of the relevant conduct occurred—New York State is the only state that has jurisdiction over Mr. Kennedy:  he maintains a bank account, mailing address, and storage unit in Bethpage, New York.  Maryland only has an interest in adjudicating the breach of contract claim, if any, as none of the other claims pertain to activity in Maryland.  (*See* p. 4, *supra*; *see also* Mem. at 12, 12 n.3.)

### B. THE EASTERN DISTRICT OF NEW YORK IS THE PROPER FORUM

MSPP focuses its argument on the word "may" in 28 U.S.C. § 1400(a) but does not ask the obvious question:  if, as MSPP contends, a copyright action could be brought in any venue regardless of the defendant's status, then why would the United States Congress enact such legislation at all?  The caselaw consistently holds that venue for copyright actions lies only in those districts having personal jurisdiction over the defendant.  *See, e.g., Shider v. Bridgeport Music, Inc.*, 13-CV-527, 2013 U.S. Dist. LEXIS 140211, at *18 (D. Md. Sep. 30, 2013) ("Courts generally determine whether venue is proper in a copyright infringement suit pursuant to 28 U.S.C. § 1400");

---

[3] This Court may deem the first two points conceded because MSPP did not respond to them.  *See, e.g., Sigala*, 2016 U.S. Dist. LEXIS 55174, at *6 n.4; *Mesco*, 2014 U.S. Dist. LEXIS 25702, at *22-23; *McKeel*, 178 F. Supp. at 504.

6

*Metro. Reg'l Info. Sys. v. Am. Home Realty Network, Inc.*, 888 F. Supp. 2d 691, 704 (D. Md. 2012) ("In copyright actions, venue is proper 'in the district in which the defendant or his agent resides or may be found.'") (citing 28 U.S.C. § 1400(a)). Omission of the word "may" for style purposes is in no way misleading and does not negate this conclusion.

MSPP could have only brought this action in the Eastern District of New York. While KTMK has no presence within the United States, KTMK—a North Macedonian company solely owned by Mr. Kennedy—will consent to jurisdiction in the Eastern District of New York. MSPP cites no authority supporting its peculiar theory that this Court can transfer this case to the District of Columbia. The District of Columbia does not have jurisdiction over KTMK or Mr. Kennedy by virtue of KTMK's copyright application and subsequent assignment to Mr. Kennedy.

C. **THERE IS NO SUPPORT FOR THE TORTIOUS INTERFERENCE CLAIM**

In the end, Plaintiff's entire support for its tortious interference claim is a single cease-and-desist letter sent to one of MSPP customers. Despite the distractions asserted in Plaintiff's brief, all of the statements made in the short letter were accurate or made in good faith. The central assertion in the disputed letter was that Kennedy is the current holder of a copyright registration in PrepMod. Despite claiming fraud on the Copyright Office and various minor exceptions to Kennedy's exclusive rights, at the time the cease-and-desist letter was issued on October 12, 2022, Kennedy was the undisputed owner of the PrepMod copyright.

This raises the question: why did MSPP fail to protect its alleged rights by taking no steps to secure a copyright registration for almost two years, *i.e.*, from the August 2020 termination of the business relationship to April 23, 2022, when the final registration was issued by the Copyright Office to KTMK? Did MSPP fail to act because it knew all along it had no valid copyright interest?

Plaintiff failed to address how its tortious interference claim meets the standards in *Fidelity & Guaranty Life Insurance Co. v. United Advisory Group, Inc.* 13-CV-40, 2015 U.S. Dis. LEXIS

7

4117 (D. Md. Jan. 12, 2015). Specifically, was the cease-and-desist letter issued "with the unlawful purpose to cause such damage….without…justifiable cause on the part of the defendants" And did those acts result in "actual damage and loss…" The best Plaintiff can claim is that one party receiving the letter terminated its license agreement, which apparently could be terminated at will. As noted in the moving brief, a mere expectancy of future revenue is not a loss. Restatement (Second) of Torts § 768 cmt. i.

*United Advisory Group* further defined wrongful conduct as including "violence or intimidation, defamation, injurious falsehood or other fraud…" Plaintiff simply has not, and cannot, meet this standard based on a single bland letter.

In a confusing additional argument in support of tortious interference, MSPP claims that when Kennedy issued the cease-and-desist letter he should have known that MSPP had "at the very least" an implied, unlimited, and "irrevocable" license to sublicense the PrepMod to dozens of government organizations and medical facilities. In support of this theory MSPP cites *Nelson-Salabes, Inc. v. Morningside Dev*., 284 F.3d 505 (4th Cir. 2002). In that case, an architectural firm sued over the use of its copyrighted architectural plans beyond the agreed scope of use. The defendant developers asserted that they had an implied <u>nonexclusive</u> license to use the copyrighted plans. However, the Fourth Circuit held "Therefore, like the district court, we are "satisfied that these facts do not support a finding that [NSI] granted Strutt [an implied] nonexclusive license." MSPP's licensing claims are not supported by this case.

Plaintiff also cites *Effects Assocs. Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990), a case involving a movie special effects firm orally agreeing to produce a special effects sequence for a film company to be used in a horror movie. Subsequently, the film company was dissatisfied with the quality of the work produced and paid only half the agreed price. Effects sued for the balance

8

of its fee due and for copyright infringement. Cohen argued that despite the lack of written agreement, it had received a *nonexclusive* license to incorporate Effects work product as a portion of the resulting film. The Ninth Circuit concluded that Cohen had received a nonexclusive license for the limited purpose of incorporating the special effects sequence in a single film. However, the decision concludes with a speculation that Effects still owned the special effects sequence and retained the full right to resell it for some other purpose.

Here, Kennedy was retained to create a completely new Covid-related software system under extraordinary time pressure. MSPP had no plans to use the resulting software for its own purposes, as in *Effects*. Rather, it expected to enter into the business of licensing the software to local governments and medical systems combating the Covid-19 Pandemic. Kennedy expected to continue to be a business partner and derive additional revenues as the software evolved and was modified. However, he became frustrated by MPSS' refusal to pay for the resulting custom product and subsequently terminated the business relationship.

Despite the alleged defective quality of Kennedy's software, MSPP proceeded to license it across the U.S. Upon information and belief, MSPP has received licensing fees of many millions of dollars, having never secured the necessary intellectual property rights from Kennedy. Indeed, MSPP appears to have been unconcerned about owning the copyright until after work stopped due to its refusal to pay the balance due of $60,000 for past completed programming. It should be noted that software licenses almost universally contain a representation by the licensor that it is owner of the software or has the exclusive rights to license the work. MSPP never had those rights, as is seen here in its attempt to bootstrap a claim for exclusive rights when, at best, it inadequately alleges a *nonexclusive* oral agreement.

### D. MSPP HAS NOT IDENTIFIED DEFAMATORY STATEMENTS

Kennedy is the lawful owner of the copyright registration for PrepMod, and as the owner he had the lawful right through counsel to notify entities he in good faith believes are infringing his intellectual property. MSPP's brief generally points to the disputed cease-and- desist letter without identifying any statement that was both "false" and "defamatory." MSPP fails to identify how it was subject public scorn, hatred, contempt, or ridicule, i.e., the essential elements of defamation.

MSPP points to paragraph 42 of the Amended Complaint as containing five false statements in the cease-and-desist letter.  Of the five statements, the first four, a-d, are all issues which Kennedy believed to be true at the time but may be disputed in this litigation. Item e was true, since as the copyright holder, Kennedy had the absolute right to license the PrepMod software. However, if one of the four statements were false, that still does not make them defamatory. Indeed, none of the statements in the cease-and-desist letter were defamatory.

Rather than address the pleading standards of a defamation claim, Plaintiff pivots to a discussion of the litigation privilege and relies on the decision in *Norman v. Borison*, 418 Md. 630 (20211). For these purposes the factual discussion can be simplified.  The owner of a company brought a defamation suit against several lawyers based on their statements regarding a class action which they intended to file based on an alleged "mortgage scam." After an extensive discussion the Court of Special Appeals found that all the lawyer's statements were privileged, and the case was properly dismissed by the courts below.  This holding is contrary to MSPP's position. Here, Kennedy's counsel asserted a statement of fact:  MSPP did not own the copyright to PrepMod. The litigation privilege would apply, and the defamation claim should be dismissed.

### E. THE COPYRIGHT CLAIMS AGAINST KTMK MUST BE DISMISSED

Plaintiff's copyright claims are asserted against by Kennedy, the owner of the PrepMod copyright, and KTMK the former owner. As the current owner of the copyright, Kennedy has all the benefits and, potentially, all the liabilities relating to this intellectual property. KTMK transferred its rights and liabilities. Unless Plaintiff can establish some independent basis for its liability to MSPP, KTMK should be dismissed from this Cause of Action.

### F. THE TRADEMARK INFRINGEMENT CLAIMS MUST BE DISMISSED

Defendants have convincingly shown that Plaintiff's allegations of trademark infringement are not supported by the First Amended Complaint. There is no doubt that use of MSPP's trademark in the cease-a-desist letter was simply a "nominative use." Plaintiff does not address any of Defendants' arguments and thereby concedes this issue. *See, e.g., Sigala*, 2016 U.S. Dist. LEXIS 55174, at *6 n.4; *Mesco*, 2014 U.S. Dist. LEXIS 25702, at *22-23; *McKeel*, 178 F. Supp. at 504.

### G. MSPP CONCEDES THE REMAINDER OF DEFENDANTS' ARGUMENTS FOR DISMISSAL

Defendants' opening brief explained other unanswered reasons this Court lacks jurisdiction over them under §6-103(b)(3) and why due process cannot support personal jurisdiction here. (*See* Mem. at 10-14.) Defendants also argued the Amended Complaint fails to state a trademark infringement claim and does not allege any conceivable cause of action against Kennedy Tech LLC. (Mem. §§ F, G.) MSPP concedes these points by not responding to *See, e.g., Sigala*, 2016 U.S. Dist. LEXIS 55174, at *6 n.4; *Mesco*, 2014 U.S. Dist. LEXIS 25702, at *22-23; *McKeel*, 178 F. Supp. at 504. MSPP also concedes no cause of action lies against Kennedy Tech LLC (Opp. at 3 ("this Court must deny [Defendant's] Motion to Dismiss (except as to KTech LLC)"), and defendants respectfully request this Court dismiss the Amended Complaint *with prejudice* as against Kennedy Tech LLC.

## II. CONCLUSION

MSPP has not met its *prima facie* burden establishing personal jurisdiction over Mr. Kennedy and KTMK. Even if it did, most of the Amended Complaint does not state a viable claim against all defendants. MSPP concedes defendant Kennedy Tech LLC should be dismissed. While dismissal against Mr. Kennedy and KTMK is also appropriate, transfer to the Eastern District of

New York in the alternative would allow for a determination on the merits and serve the interests of justice.

Dated: October 3, 2023

                                                Respectfully Submitted:
**PETER BROWN & ASSOCIATES PLLC**

By:   /s/ *Peter Brown*
        Peter Brown (*pro hac vice*)
        Peter Brown & Associates PLLC
        260 Madison Avenue, 16th Floor
        New York, NY 10016-2400
        Telephone: (212) 939-6440
        pbrown@browntechlegal.com

**KRF LEGAL**

By:   /s/ *Kathleen R. Fitzpatrick*
        Kathleen R. Fitzpatrick (*pro hac vice*)
        KRF Legal
        249 Smith Street #118
        Brooklyn, NY 11231
        Telephone (917) 475-6760
        kathleen@krflegal.com

**SCHULMAN BHATTACHARYA, LLC**

By:   /s/ *James J. Schaller*
        James J. Schaller (Fed. Bar No. 21081)
        Schulman Bhattacharya, LLC
        6116 Executive Boulevard, Suite 425
        North Bethesda, Maryland 20852
        Telephone: (240) 356-8550
        Email: jschulman@schulmanbh.com

        *Counsel for Defendants Samuel Kennedy, Kennedy Technologies MK, and Kennedy Technology, LLC*