**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
MULTI-STATE PARTNERSHIP FOR
PREVENTION, LLC

               *Plaintiff*,

                                                             **MEMORANDUM**
                                                             **AND ORDER**
              -against-                                           24-CV-00013 (JMW)

SAMUEL KENNEDY *et al.*,

               *Defendants*.
-------------------------------------------------------------------X

**A P P E A R A N C E S:**

    Howard A Newman, Esq.
    **Newman Law Offices**
    1717 K Street NW Suite 900
    Washington, DC 20006
    *Attorney for Plaintiff*

    Kathleen Rose Fitzpatrick, Esq.
    **KRF Legal**
    249 Smith St, #118
    Brooklyn, NY 11231

        -and-

    Peter Brown, Esq.
    **Peter Brown & Associates PLLC**
    260 Madison Avenue, Ste 16th Floor
    New York, NY 10016
    *Attorneys for Defendants*

**WICKS**, Magistrate Judge:

        What does it mean to "meet and confer" to address discovery disputes prior to the filing a discovery motion? This seemingly simple mandate appears difficult in application.

Plaintiff, Multi-State Partnership for Prevention, LLC ("Plaintiff") originally commenced this declaratory judgment action on March 13, 2023 against Defendants Samuel Kennedy, Kennedy Technology MK, and Kennedy Technology LLC (collectively, "Defendants") for copyright non-infringement, trademark infringement, breach of contract, defamation and tortious interference in the United States District Court for the District of Maryland, arising out of Plaintiff's development of computer software program, PrepMod, developed in the early stages of the COVID-19 pandemic. (ECF Nos. 1, 22.) Plaintiff filed a First Amended Complaint ("FAC"), on July 27, 2023, asserting invalidity of copyright, non-infringement of copyright, breach of contract, tortious interference of contractual relations, defamation, and trademark infringement against Defendants. (ECF No. 22.) Plaintiff's FAC specifically alleges:

> On March 10, 2020, Plaintiff met with Defendants electronically, and Plaintiff gave Defendants access to the code to companion software MSPP created in 2017 known as ReadiConsent and ClinicWizard, as well as a prototype of PrepMod. (ECF No. 22 at ¶ 12–13.) Three days later, on March 12, 2020, MSPP provided Defendants a list of "enhancements" to the code "to fortify it so that it could accommodate the anticipated demand produced by COVID." (*Id.* at ¶ 14.) On March 26, 2020, the parties met again electronically and came to an oral agreement regarding the terms of a contract. (*Id.* at ¶ 17.) Although a written contract was requested, Defendants never sent Plaintiff a contract. (*Id.* at ¶ 18–19, 23.)
>
> Beginning in March 2020, Defendants worked with Plaintiff's developers on the development of code using GitHub, a third-party, secure platform and cloud-based service for software development in which developers store and edit code resulting in time-stamped files and software. (*Id.* at ¶ 20–21.) Between April and August 2020, Defendants delivered code and software to MSPP without imposing any limitations on its use. (*Id.* at ¶ 34.) In May and June 2020, Kennedy represented to multiple third parties, as well as to Plaintiff, that Plaintiff owned the copyright to any work that Defendants had created. (*Id.* at ¶ 25.) On August 16, 2020, Defendants gave Plaintiff a final copy of the work they had completed via GitHub. (*Id.* at ¶ 29.) Plaintiff received and paid multiple invoices for the work. (*Id.* at ¶ 24, 28, 30.)
>
> On August 19, 2020, Defendants decided to withdraw from the project but stated that they would continue working during a transition. (*Id.* at ¶ 31.) The next day, however, Defendants "quit without any transition," and "the software that they had created was not

2

> functional." (*Id.* at ¶ 32.) Plaintiff was thereafter "forced to engage other software developers to remedy the non-functional software." (*Id.* at ¶ 33.) On August 23, 2020, Kennedy sent an unexecuted assignment of copyright to MSPP. (*Id.* at ¶ 35.) Plainitff obtained trademark registration, U.S. Patent and Trademark Office No. 6461613, of and for "PrepMod." (*Id.* at ¶ 38.) Claiming a first publication on April 1, 2020, the U.S. Copyright Office awarded to Kenedi Tehnolodjis DOOEL uvoz-izvoz Struga, a copyright claimant, a copyright registration for a computer program entitled "PrepMod" from a deposited work, Registration No. TX 9-113-201, effective April 23, 2022. (*Id.* at ¶ 39.)
>
> On October 13, 2022, Kennedy claimed ownership of PrepMod and sent a cease-and-desist letter to the Philadelphia Department of Health (ECF No. 1-3), which was engaged in a contractual relationship with MSPP. (ECF No. 22 ¶ 40.) That day and the following day, Kennedy submitted four other letters to two state departments of health, a county department of health, and a health system, none of which were in Maryland. (ECF No. 14-2 ¶ 17.) The letters claimed that Defendants had developed a software application as requested, Plaintiff had severed all business relations with Defendants, Plaintiff had acquired no intellectual property rights to PrepMod, and Plaintiff and its licensees were engaging in copyright infringement. (ECF No. 22 ¶ 41.)

(ECF No. 34) (modified and cleaned up) (summarizing the allegations in Plaintiff's FAC).

On January 2, 2024, the case was transferred from the District of Maryland to the Eastern District, and on February 8, 2024, the parties consented to the undersigned's jurisdiction for all purposes. (*See* Electronic Order dated January 2, 2024; ECF Nos. 44, 45.) On February 9, 2024, Plaintiff's FAC was dismissed by the undersigned in its entirety pursuant to Federal Rule of Civil Procedure ("FRCP") 41(a)(1)(A)(ii) as against defendant Kennedy Technology, LLC, and the following causes of action set forth in Plaintiff's FAC were dismissed pursuant to FRCP 41(a)(1)(A)(ii) as against Defendants Samuel Kennedy and Kennedy Technology MK: (i) Plaintiff's cause of action for tortious interference (Count IV); (ii) Plaintiff's cause of action for defamation (Count V); and (iii) Plaintiff's cause of action for trademark infringement (Count VI). (*See* Electronic Order dated February 9, 2024.)

On March 1, 2024, Defendants Samuel Kennedy and Kennedy Technology MK filed an Answer to the FAC, asserting counterclaims against Plaintiff for copyright infringement and

3

breach of contract, alleging that: (i) Defendants hold the exclusive right pursuant to the Copyright Act to distribute, license and create derivative works of the PrepMod software, and that Plaintiff knowingly and willfully infringed Mr. Kennedy's exclusive right in the PrepMod software by licensing it – or a derivative of it – to five institutions without authorization from Mr. Kennedy; and (ii) Plaintiff breached its agreement with Defendants to pay Mr. Kennedy a weekly rate $7,500 to create the PrepMod software. (ECF No. 48.) The parties are currently in the midst of fact discovery. (*See* Electronic Order dated June 4, 2024.) Now, before the Court are three letter motions:

1. Plaintiff's Motion for a Protective Order (ECF No. 53);
2. Plaintiff's Supplemental Motion for a Protective Order (ECF No. 55); and
3. Plaintiff's Motion to Compel (ECF No. 57).

All three motions are opposed. (*See* ECF Nos. 56, 58.) For the reasons set forth below, Plaintiff's Motion for a Protective Order and Supplemental Motion (ECF Nos. 53, 55) are **DENIED**, and Plaintiff's Motion to Compel is **DENIED**, *without prejudice and with leave to renew*.

## DISCUSSION

### I. Plaintiff's Motion for a Protective Order

#### A. The Parties' Contentions

On June 4, 2024, Plaintiff advised the Court that it served a proposed Rule 11 Motion upon Defendants on May 15, 2024 claiming that Defendant's counterclaim for copyright infringement is frivolous. (ECF No. 53.) Plaintiff's proposed Rule 11 Motion states, in relevant part:

> On March 26, 2020, a software developer, Defendant Kennedy, entered into an agreement with [Plaintiff] for the expeditious and timely updating of its software code, *i.e.*, the intellectual property that would create PrepMod. PrepMod is a computer software program developed to automate key aspects of delivering mass vaccination in response to COVID-19. The engagement, during the pandemic, was to be, at most, an approximately eight-

4

> week project (consisting of a First and Second Stage) that would end by approximately June 1, 2020. Defendants dispute this account. Almost three months later, on August 20, 2020, the day after [Plaintiff] had paid an invoice, Kennedy quit without producing a functional software and without helping to transition to other developers as he had promised in writing only the day prior. Defendants somehow dispute the previous as well.
>
> What is not in dispute is that that there was an agreement between at least Kennedy and [Plaintiff] that was not memorialized to a writing for the authoring of software code. It is also not in dispute that at no time prior to the cessation of the relationship between the Parties, *i.e.*, August 19, 2020, did Kennedy ever proscribe use of the IP—predicated on full or any payment for that matter—or even raise the issue of [Plaintiff's] use at all. Indeed, prior to August 19, 2020, Kennedy had represented *in writing* to [Plaintiff] that it owned the IP, that he could, at any time, readily sign any assignment agreement memorializing the *de facto* assignment, and without objection, [Plaintiff] had informed him that it had already sold a license and that he immediately needed to produce a functional software, which, again, never occurred.
>
> After [Plaintiff] learned from one of its licensees in or after February, 2023, that Kennedy had sent cease and desist letters replete with misrepresentations—Defendants had not contacted [Plaintiff] prior to that point—[Plaintiff] expeditiously filed a federal suit against Defendants. After multiple written and oral communications, on May 1, 2023, Defendants received from [Plaintiff] a prejudicial detailed legal analysis showing conclusively that it could not be in dispute that "at the very least, Defendants had conveyed to [Plaintiff] an implied, unlimited and irrevocable license to the [IP]." Indeed, [Plaintiff] showed that it, according to Kennedy, already owned the IP. Importantly, undergirded by the universe of emails that [Plaintiff] supplied to Defendants, [Plaintiff] also conclusively showed that material, dispositive facts were in [Plaintiff's] favor. Again, somehow Defendants dispute the previous. Defendants also dispute that at the time the Parties' relationship ceased, [Plaintiff] had agreed *in writing* to place into escrow the full amount that Kennedy had claimed was in dispute to allow a third party to decide the dispute, including Kennedy's breach of contract.
>
> Thus, what is in reasonable dispute in this matter are the monetary terms of the Parties' agreement and which party(-ies) breached the contract. What is also in reasonable dispute is whether [Plaintiff] has an implied license or whether [Plaintiff] already owns the copyright to the IP, which its registration, as [Plaintiff] has alleged, was procured through fraud. What is not or should not be in dispute is that Defendants do not have even a colorable counterclaim for copyright infringement. Indeed, such is frivolous since there can be no infringement. It also means that anything deriving from the frivolous counterclaim, including Defendants' discovery requests, [is] also frivolous. Defendants have known of this frivolity since at least May 1, 2023.

(ECF No. 53 at 1-3) (internal citations omitted) (cleaned up).

The Rule 11 motion was not filed. However, Plaintiff ultimately seeks a protective order from this Court "for all discovery propounded by Defendants that arise or concern their counterclaim for copyright infringement until this Court has ruled on [Plaintiff's] *prospective*: (i) Rule 11 motion, unless Defendants dismiss said counterclaim prior to the expiration of the safe harbor period; and/or (ii) Rule 56 motion for partial summary judgment on at least [Plaintiff's] claim for non-infringement of copyright, Count II of the Verified FAC." (*Id*. at 3) (emphasis added).

On June 6, 2024, the undersigned denied Plaintiff's Motion for a Protective Order without prejudice and with leave to renew in light of the parties' failure to "meaningful effort to meet and confer prior" to Plaintiff's filing of the Motion. (*See* Electronic Order dated June 6, 2024.) On June 18, 2024, the parties appeared for a Status Conference before the undersigned (the "June 18 Conference"), and the Court subsequently renewed Plaintiff's Motion for a Protective Order (ECF No. 53) and held all discovery dates and deadlines in abeyance pending the outcome of the Motion. (ECF No. 54.) The undersigned further noted that "[w]ith the exception of the subject of the motion for a protective order filed at ECF No. 23, discovery is not stayed and shall proceed; only deadlines are held in abeyance until the Court decides the motion at which time new deadlines will be set." (*Id*.) On June 28, 2024, Plaintiff filed a Supplemental Motion for a Protective Order. (ECF No. 55.) Plaintiff advised that during the June 18 Conference, Plaintiff "amplified its desire as stated in [its] Motion [for a Protective Order] that [it] intended to use Defendants' responses to discovery in a prospective Rule 11 motion and a Rule 56 motion for partial summary judgment[,] [and] [u]nfortunately, in objecting to every single interrogatory, request for admission, and request for production, [Plaintiff] has already requested a Rule 37 conference occur with another conference

The Rule 11 motion was not filed. However, Plaintiff ultimately seeks a protective order from this Court "for all discovery propounded by Defendants that arise or concern their counterclaim for copyright infringement until this Court has ruled on [Plaintiff's] *prospective*: (i) Rule 11 motion, unless Defendants dismiss said counterclaim prior to the expiration of the safe harbor period; and/or (ii) Rule 56 motion for partial summary judgment on at least [Plaintiff's] claim for non-infringement of copyright, Count II of the Verified FAC." (*Id*. at 3) (emphasis added).

On June 6, 2024, the undersigned denied Plaintiff's Motion for a Protective Order without prejudice and with leave to renew in light of the parties' failure to "meaningful effort to meet and confer prior" to Plaintiff's filing of the Motion. (*See* Electronic Order dated June 6, 2024.) On June 18, 2024, the parties appeared for a Status Conference before the undersigned (the "June 18 Conference"), and the Court subsequently renewed Plaintiff's Motion for a Protective Order (ECF No. 53) and held all discovery dates and deadlines in abeyance pending the outcome of the Motion. (ECF No. 54.) The undersigned further noted that "[w]ith the exception of the subject of the motion for a protective order filed at ECF No. 23, discovery is not stayed and shall proceed; only deadlines are held in abeyance until the Court decides the motion at which time new deadlines will be set." (*Id*.) On June 28, 2024, Plaintiff filed a Supplemental Motion for a Protective Order. (ECF No. 55.) Plaintiff advised that during the June 18 Conference, Plaintiff "amplified its desire as stated in [its] Motion [for a Protective Order] that [it] intended to use Defendants' responses to discovery in a prospective Rule 11 motion and a Rule 56 motion for partial summary judgment[,] [and] [u]nfortunately, in objecting to every single interrogatory, request for admission, and request for production, [Plaintiff] has already requested a Rule 37 conference occur with another conference

The Rule 11 motion was not filed. However, Plaintiff ultimately seeks a protective order from this Court "for all discovery propounded by Defendants that arise or concern their counterclaim for copyright infringement until this Court has ruled on [Plaintiff's] *prospective*: (i) Rule 11 motion, unless Defendants dismiss said counterclaim prior to the expiration of the safe harbor period; and/or (ii) Rule 56 motion for partial summary judgment on at least [Plaintiff's] claim for non-infringement of copyright, Count II of the Verified FAC." (*Id*. at 3) (emphasis added).

On June 6, 2024, the undersigned denied Plaintiff's Motion for a Protective Order without prejudice and with leave to renew in light of the parties' failure to "meaningful effort to meet and confer prior" to Plaintiff's filing of the Motion. (*See* Electronic Order dated June 6, 2024.) On June 18, 2024, the parties appeared for a Status Conference before the undersigned (the "June 18 Conference"), and the Court subsequently renewed Plaintiff's Motion for a Protective Order (ECF No. 53) and held all discovery dates and deadlines in abeyance pending the outcome of the Motion. (ECF No. 54.) The undersigned further noted that "[w]ith the exception of the subject of the motion for a protective order filed at ECF No. 23, discovery is not stayed and shall proceed; only deadlines are held in abeyance until the Court decides the motion at which time new deadlines will be set." (*Id*.) On June 28, 2024, Plaintiff filed a Supplemental Motion for a Protective Order. (ECF No. 55.) Plaintiff advised that during the June 18 Conference, Plaintiff "amplified its desire as stated in [its] Motion [for a Protective Order] that [it] intended to use Defendants' responses to discovery in a prospective Rule 11 motion and a Rule 56 motion for partial summary judgment[,] [and] [u]nfortunately, in objecting to every single interrogatory, request for admission, and request for production, [Plaintiff] has already requested a Rule 37 conference occur with another conference

The Rule 11 motion was not filed. However, Plaintiff ultimately seeks a protective order from this Court "for all discovery propounded by Defendants that arise or concern their counterclaim for copyright infringement until this Court has ruled on [Plaintiff's] *prospective*: (i) Rule 11 motion, unless Defendants dismiss said counterclaim prior to the expiration of the safe harbor period; and/or (ii) Rule 56 motion for partial summary judgment on at least [Plaintiff's] claim for non-infringement of copyright, Count II of the Verified FAC." (*Id*. at 3) (emphasis added).

On June 6, 2024, the undersigned denied Plaintiff's Motion for a Protective Order without prejudice and with leave to renew in light of the parties' failure to "meaningful effort to meet and confer prior" to Plaintiff's filing of the Motion. (*See* Electronic Order dated June 6, 2024.) On June 18, 2024, the parties appeared for a Status Conference before the undersigned (the "June 18 Conference"), and the Court subsequently renewed Plaintiff's Motion for a Protective Order (ECF No. 53) and held all discovery dates and deadlines in abeyance pending the outcome of the Motion. (ECF No. 54.) The undersigned further noted that "[w]ith the exception of the subject of the motion for a protective order filed at ECF No. 23, discovery is not stayed and shall proceed; only deadlines are held in abeyance until the Court decides the motion at which time new deadlines will be set." (*Id*.) On June 28, 2024, Plaintiff filed a Supplemental Motion for a Protective Order. (ECF No. 55.) Plaintiff advised that during the June 18 Conference, Plaintiff "amplified its desire as stated in [its] Motion [for a Protective Order] that [it] intended to use Defendants' responses to discovery in a prospective Rule 11 motion and a Rule 56 motion for partial summary judgment[,] [and] [u]nfortunately, in objecting to every single interrogatory, request for admission, and request for production, [Plaintiff] has already requested a Rule 37 conference occur with another conference

already set for July 3, 2024, to identify a briefing schedule for said Rule 56 motion." (ECF No. 55.)

On July 1, 2024, Defendants filed their Response in Opposition to Plaintiff's Motion for Protective Order and Supplement. (ECF No. 56.) Defendants contend the FAC at Count I seeks to invalidate Defendant Mr. Kennedy's copyright and Count II seeks a finding of non-infringement of that copyright, and, in moving for protective order, Plaintiff "asks this Court to protect it from disclosing any of its actions regarding the copyrighted software, including any licenses issued and revenues received from infringing Kennedy's copyright." (*Id*. at 1.) Defendants assert the licenses were issued even though Plaintiff paid for less than half the services rendered by Mr. Kennedy, and Plaintiff's refusal to honor its agreements with Mr. Kennedy resulted in this litigation. (*Id*.) Defendants have reason to believe that the software in dispute has been licensed to at least two dozen government and private entities, and that Plaintiff has earned well over a million dollars in licensing fees. (*Id*.) Defendants argue that Plaintiff has not offered any reason it needs protection of this Court, "except for a legal conclusion that it could repeatedly license and profit from Mr. Kennedy's work without payment based on a misplaced reading of the applicable copyright law." (*Id*.) Defendants maintain Plaintiff's Motion for a Protective Order "is only the latest legal maneuver by [Plaintiff] to conceal both its actions and resulting ill-gotten gains, as [Plaintiff's] counsel has repeatedly threatened Rule 11 sanctions to discourage the prosecution of Mr. Kennedy's counterclaim." (*Id*.)

Defendants further contend that Plaintiff's Motion "falls far short of the heavy burden Rule 26(c) places on parties seeking protective orders" as it makes "no mention of good cause and includes no substantiated facts, relying instead on conclusory assertions that Mr. Kennedy's copyright infringement counterclaim is frivolous." (*Id*. at 2.) Defendants note that Plaintiff does

7

not dispute that Mr. Kennedy currently holds the copyright at issue, but asks this Court to "prematurely find—without any admissible evidence—that [Plaintiff] has an implied license to use Mr. Kennedy's copyright." (*Id.*) Defendants further note that Plaintiff has not moved to dismiss this counterclaim, nor has it followed through on its threats to move for Rule 11 sanctions against Defendants, which have been threatened since before Defendants formally appeared in this litigation. (*Id.*) Defendants maintain that Plaintiff "appears to seek a blanket protective order staying any discovery request it deems related to Mr. Kennedy's counterclaim" but Plaintiff's Motion does not identify any specific discovery requests, nor does it explain how—even if Mr. Kennedy's counterclaim is ultimately unsuccessful—responding to those requests would cause Plaintiff's 'annoyance, embarrassment, oppression, or undue burden or expense.'" (*Id.*) (quoting Fed. R. Civ. P. 26(c)). Finally, Defendants explain that: (i) an implied license is a defense to copyright infringement and cannot be used to circumvent a copyright infringement action; and (ii) "whether a nonexclusive implied license exists when the author has not been paid is a fact intensive inquiry . . [c]ourts must look to the totality of the circumstances regarding intent when no written contract exists." (*Id.* at 3.) Mr. Kennedy believes that after discovery on his counterclaim, the totality of the circumstances here will support a finding that Plaintiff infringed Mr. Kennedy's copyright and it never had a non-exclusive implied license. (*Id.*)

    **B.**     <u>**Analysis**</u>

Parties seeking cover from discovery may avail themselves of a motion for a protective order which, in effect, is the flip side of a motion to compel. Rule 26(c) affords protection for abusive or embarrassing discovery, providing that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment,

oppression, or undue burden or expense. . . ." Fed. R. Civ. P. 26(c)(1); *see Gordon v. Target Corp.*, 318 F.R.D. 242, 246 (E.D.N.Y. 2016) ("[T]he touchstone for determining whether to issue a protective order under Rule 26(c) lies, in the first instance, on a party's ability to establish good cause"). The burden is on the party seeking issuance of the order to show "good cause" through "particular and specific facts" as opposed to "conclusory assertions." *Rofail v. United States*, 227 F.R.D. 53, 54–55 (E.D.N.Y. 2005). "If the movant establishes good cause for protection, the court may balance the countervailing interests to determine whether to exercise discretion and grant the order." *Id.* at 55. "Because of the interest in broad discovery, the party opposing the discovery of relevant information, whether through a privilege or protective order, bears the burden of showing that based on the balance of interests the information should not be disclosed." *Fowler-Washington v. City of New York*, No. 19-CV-6590 (KAM) (JO), 2020 WL 5893817, at *3 (E.D.N.Y. Oct. 5, 2020) (internal quotation and citation omitted).

Plaintiff's Motion for a Protective Order seeks to avoid production of all discovery demands propounded by Defendants that arise or concern their counterclaim for copyright infringement until this Court has ruled on Plaintiff's prospective Rule 11 motion and/or Rule 56 motion for partial summary judgment. *Preliminarily*, the undersigned notes that Plaintiffs had the opportunity to move for dismissal of Defendant's copyright infringement counterclaim and test its legal position, but did not do so, and Plaintiff has neither filed a Rule 11 Motion nor a Motion for Summary Judgment to date. Nevertheless, the "issue for this [M]otion for a [P]rotective Order is whether [all discovery related to Defendant's counterclaim for copyright infringement] [is] essential for [Defendants] to respond to [Plaintiff's anticipated] summary judgment [and/or Rule 11] motion[s] to warrant denial of the [M]otion for the [P]rotective Order." *Covell v. Chiari & Ilecki, LLP*, No. 12CV660A, 2013 WL 3539192, at *5 (W.D.N.Y. July 11, 2013) ("*Covell*")

9

(exploring the intersection of a Rule 11 Motion, a Motion for Summary Judgment, and a Motion for a Protective Order). Here, Defendants have more than adequately shown that discovery is not only appropriate but necessary with respect to their copyright infringement counterclaim to show: (i) that the claim is not frivolous; and/or (ii) to defend against Plaintiff's anticipated motion for summary judgment on the non-infringement claim.

Essentially, Defendants need the discovery to respond to either anticipated Motion. *See* ECF No. 56 at 3 ("Mr. Kennedy believes that after discovery on his counterclaim, the totality of the circumstances here will support a finding that Plaintiff infringed Mr. Kennedy's copyright and it never had a non-exclusive implied license."). By contrast, the undersigned finds Plaintiff failed to show good cause as to why discovery on a pending counterclaim should be stayed. In fact, Plaintiffs concede that it is disputed between the parties "whether [Plaintiff] has an implied license or whether [Plaintiff] already owns the copyright to the IP, which its registration, as [Plaintiff] has alleged, was procured through fraud" such that the undersigned finds the discovery Defendants are seeking to be directly material and relevant to their counterclaim, and not otherwise "abusive or embarrassing" discovery, under FRCP 26(c)(1). Accordingly, the Court finds Plaintiff's Motion for Protective Order should be denied, with prejudice and without leave to renew, for lack of good cause shown.

**II.     Plaintiff's Motion to Compel**

    **A.     The Parties' Contentions**

On July 16, 2024, Plaintiff filed a Motion to Compel seeking "an appropriate order and sanctions as a result of Defendants' discovery violations, including refusing to meet and confer, providing evasive and non-answers [to Plaintiff's interrogatories, requests for production, and requests for admission], and a total lack of production of documents." (ECF No. 57.) Plaintiff

claims Defendants had responded to its First Set of Discovery on June 25, 2024, and they responded to a Second Set on July 5, 2024. (*Id*.) However, Plaintiff contends Defendants "never produced any documents since they, without citation, have represented that this Court stayed their obligation despite this Court's clear instruction otherwise during" the June 18 Conference. (*Id*.) Plaintiff further claims Defendants have willfully and intentionally refused to meet and confer with Plaintiff concerning discovery. (*Id*.) Ultimately, Plaintiff's Motion makes six (6) requests:

> [*First*], this Court should find that Defendants willfully refused to meet and confer with Defendants (by canceling an agreed conference date and refusing to provide follow-up dates). [*Second*,] this Court may easily conclude that Defendants intentionally violated these discovery obligations. [*Third*], this Court should also easily come to the same conclusion for Defendants' lack of production of documents as Defendants disobeyed this Court's clear order that discovery "shall proceed" unless subject to the Motion. Defendants' discovery responses were not subject to the Motion. Notably, only after [Plaintiff] issued an ultimatum did Defendants first cite a different rationale for their non-production. To be sure, [Plaintiff] is not blind to the circumstances of foreign-based litigants. However, Defendants in also refusing to substantively answer certain interrogatories, instead directed [Plaintiff] to Defendants' non-production! It is impossible to note that Defendants had an objection to every single interrogatory, request for admission, and request for production.
>
> [*Fourth*, this Court] should order, *inter alia*, Defendants to: 1) immediately answer interrogatories 4, 7-10 fully, and if there is a citation to documents, only as a supplementation; 2) produce documents; and (3) promptly thereafter meet and confer with [Plaintiff] to (a) set a briefing schedule for a partial Rule 56 motion; and (b) to review Defendants' responses to at least [Plaintiff]'s (i) interrogatories 2, 4, 6-11, and 15-16; (ii) requests for admissions from the First Set, 1-8, 13-24; 26-32, 36-37, and 39, and from the Second Set, 1-16; and (iii) requests for the production of documents from the First Set, 3-5, 8-11, 13-17, 19, 24-25, and 28-35, and the Second Set, 2-3. [*Fifth*, this Court should] issue appropriate sanctions under the circumstances and without further comment by [Plaintiff]. [*Sixth*, this Court should] emphasize one conclusion: Defendants' actions have and are materially prejudicing Plaintiff since it wishes to promptly bring a partial Rule 56 motion so that this Court may easily conclude that [Plaintiff], at the least, has an implied, unlimited and irrevocable license to certain intellectual property.

(*Id*. at 3.) (internal citations omitted) (cleaned up).

On July 23, 2024, Defendants filed their Response in Opposition to Plaintiff's Motion to Compel. (ECF No. 58.) Defendants report the parties agreed to serve their first written discovery

11

requests on April 19, 2024, three months ago, and Defendants complied with that deadline. (*Id*.) Defendants further report that Plaintiff served additional requests three days late, on April 22, 2024, and, exactly one week after service of Defendants' discovery requests, on April 26, 2024, Plaintiff's counsel announced it would be moving for sanctions under Rule 11, on the basis that Mr. Kennedy's copyright infringement claim is frivolous, and that it would not be responding to any of Defendants' discovery demands pertaining to that counterclaim. (*Id.*) Plaintiff subsequently served its survey Rule 11 motion nearly three weeks later, on May 15, 2024, only after Defendants' counsel inquired, and Defendants swiftly sought [Plaintiff]'s consent to stay, and later to extend, the deadline to exchange written discovery responses until after the June 18 Conference, because they understood the threat of a Rule 11 motion as a pretext to withhold discovery "and foresaw the chaos [Plaintiff] was trying to sow." (*Id*.) On June 4, 2024, Plaintiff requested a conference with Defendants to discuss yet another protective order and also served additional discovery requests, before even receiving written responses to Plaintiff's first discovery requests. (*Id*.) Defendants counsel conferenced with Plaintiff's counsel, at Plaintiff's request, on June 13, 2024, ahead of the June 18 conference. (*Id.*) On June 19, 2024, Plaintiff demanded defendants confer to set a briefing schedule for a summary judgment motion and "refused to grant a short extension" for Defendants to respond to its second set of discovery demands unless they agreed. (*Id*.)

      Defendants further contend they have not engaged in willful discovery violations, and Plaintiff's Motion to Compel—filed three weeks after Defendants served responses to Plaintiff's first discovery requests and 11 days after Defendants served responses to Plaintiff's second discovery requests—is premature. (*Id.* at 2.) Defendants argue they have accommodated Plaintiff's multiple requests for long extensions and worked in good faith to resolve disputes. (*Id*.) Defendants

12

claim they have complied with the June 25, 2024, and July 5, 2024, deadlines to serve written discovery responses and also "justifiably requested holding only one Rule 37 conference to address all parties' written discovery responses." (*Id.*) Defendants maintain the parties initially contemplated document production would occur *after* exchange of written responses and Plaintiff demanded production only 11 days after receiving Defendants' second discovery responses, and filed its Motion to Compel less than one week after defendants explained they will be producing documents. (*Id.*) Defendants contend the deadline to produce documents is currently held in abeyance because Plaintiff's Motion for a Protective Order is pending, and Defendants are otherwise "diligently working to produce documents and hope to begin their rolling production" before the August 13, 2024 Status Conference scheduled before the undersigned. (*Id.*) Defendants further maintain that Plaintiff does not explain why Defendants' specific objections to particular discovery requests were improper:

> For example, [Plaintiff] asks this Court to order [D]efendants to "immediately answer interrogatories 4, 7-10 fully, and if there is a citation to documents, only as a supplementation," but does not identify which [D]efendant's interrogatory responses were deficient. Kennedy's responses to those interrogatories referred to "documents it will produce on a rolling basis pursuant to MSPP's first request for production." [Defendants fully objected to Interrogatory 9, answered Interrogatory 8, and similarly referred to documents it will produce. [Plaintiff]'s contention that [D]efendants must specifically respond to these interrogatories rather than producing documents is misplaced. Rule 33 allows a party to produce business records when "the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records . . ., and . . . the burden of deriving or ascertaining the answer will be substantially the same for either party." Fed. R. Civ. P. 33(d).

(*Id.* at 2-3.) (cleaned up) (internal citations omitted).

Defendants further argue Plaintiff also has no basis to compel a summary judgment motion now because discovery is incomplete, and this Court "should not allow [Plaintiff] to use a temporary stay of its obligation to respond to [D]efendants' discovery requests to force a premature

13

summary judgment motion." (*Id*. at 3.) Defendants claim that Plaintiff has refused to answer 18 of Defendants' 21 interrogatories and 10 of Defendants' 30 requests for production, and also has not confirmed it produced all documents, as none of its written responses identify specific documents or bates numbers. (*Id*.) Defendants request that once this Court decides Plaintiff's pending Motion for a Protective Order, it set deadlines for Plaintiff to revise its discovery responses, and for the parties to subsequently meet and confer on all parties' discovery responses. (*Id*.) Defendants further request this Court issue an Order requiring pre-motion conferences for any other motions, to avoid additional chaos and delay. (*Id*.)

      **B.**      <u>**Analysis**</u>

Pursuant to Fed. R. Civ. P. 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Information "is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Vaigasi v. Solow Mgmt. Corp.*, No. 11-CV-5088, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Evid. 401). Moreover, "[t]he party seeking the discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Evans v. Calise*, No. 92-CV-8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994); *see also Mandell v. The Maxon Co., Inc.*, No. 06-CV-460, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007) ("[T]he party seeking discovery bears the burden of initially showing relevance."). To that

14

end, the discovery sought by the parties must be, as stated by Rule 26, proportional to the needs of the case, taking into consideration such aspects as the importance of the issues, the amount in controversy, the parties' resources and access to the information sought, and the importance of the information sought to the asserted claims or defenses. *Sibley v. Choice Hotels Int'l*, No. 14-CV-634 (JS) (AYS), 2015 WL 9413101, at *2–3 (E.D.N.Y. Dec. 22, 2015).

"Rule 26 has defined the scope of discovery to consist of information that is relevant to the parties' 'claims and defenses.'" *Pothen v. Stony Brook Univ.*, No. 13-CV-6170 (JFB) (AYS), 2017 WL 1025856, at *2 (E.D.N.Y. Mar. 15, 2017). "Thus, the discretionary authority to allow discovery of 'any matter relevant to the subject matter involved in the action' has been eliminated," and permissible discovery under Rule 26 must be relevant "to any party's claim or defense," and that means "proportional to the needs of the case." *Id.* at *3 (citing Fed. R. Civ. P. 26(b)(1)). Proportionality goes "hand-in-hand" with relevance. *New Falls Corp. v. Soni*, No. 16-CV-6805 (ADS) (AKT), 2020 WL 2836787, at *2 (E.D.N.Y. May 29, 2020). That is, the more relevant the information sought is, the less likely the Court would find the subject discovery disproportionate. *Id.* It is beyond doubt that "[m]otions to compel are left to the court's sound discretion." *Mirra v. Jordan*, No. 13-CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016); *see also Liberty Mut. Ins. Co. v. Kohler Co.*, No. 08-CV-867, 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010) ("[A] motion to compel is entrusted to the sound discretion of the district court.").

As the parties are aware, the Federal Rules of Civil Procedure, the Local Civil Rules of this Court, and the undersigned's Individual Practice Rules concomitantly require that parties meet and confer in a good faith attempt to resolve discovery disputes before formally initiating motion practice or raising disputes with the Court. *See* Individual Practice Rule 3.A; Local Civil Rules 26.4, 37.3(a); Fed R. Civ. P. 37(a). This requires the parties to:

15

> Meet, *in person or by telephone*, and make a *genuine effort* to resolve the dispute by determining: (i) what the requesting party is actually seeking; (ii) what the discovering party is reasonably capable of producing that is responsive to the request; and (iii) what specific genuine issues, if any, cannot be resolved without judicial intervention.

*Excess Ins. Co. v. Rochdale Ins. Co.*, No. 05-CV-10174, 2007 WL 2900217, at *12 (S.D.N.Y. Oct. 4, 2007) (emphasis added) (explaining the meet and confer requirement). This command is repeatedly reaffirmed – perhaps because the meet and confer requirement obviates unnecessary judicial handholding and encourages parties to raise only genuine disputes that could not otherwise be resolved with good faith and civility. *See Excess Ins. Co. v. Rochdale Ins. Co*., No. 05-CV-10174, 2007 WL 2900217, at *1 (S.D.N.Y. Oct. 4, 2007) ("The purpose of the meet and confer requirement is to resolve discovery matters without the court's intervention to the greatest extent possible. Only those matters that remain unresolved after serious attempts to reach agreement should be the subject of a [discovery motion]."); *see also Ross v. Citifinancial, Inc.,* 203 F.R.D. 239, 240 (S.D. Miss. 2001) (the meet and confer "prerequisite is not an empty formality" and "cannot be satisfied by including with the motion copies of correspondence that discuss the discovery at issue").

It is apparent from the instant application that the parties have not made a meaningful effort to meet and confer prior to raising this dispute with the Court. Meet and confers should not be treated as a mere "drive-by." Perfunctory email correspondence for example simply does not suffice. *See, e.g*., ECF Nos. 57 at 2.[1] The Court additionally notes the parties had an opportunity

---

[1] The parties are reminded – once again (*see* Electronic Order dated June 6, 2024) – that to "'[c]onfer' means to meet, in person or by telephone, and make a genuine effort to resolve the dispute by determining ... (a) what the requesting party is actually seeking, (b) what the discovering party is reasonably capable of producing that is responsive to the request, and (c) what specific genuine issues, if any, cannot be resolved without judicial intervention." *Big Apple Pyrotechnics v. Sparktacular Inc*., No. 05 Civ. 9994, 2006 WL 587331, at *1 (S.D.N.Y. Mar. 8, 2006); *see also Deckon v. Chidebere*, No. 93 Civ. 7845, 1994 WL 494885, at *5 (S.D.N.Y. Sept. 9, 1994). The movant must provide evidence of its good faith efforts; a mere

16

to discuss any outstanding discovery disputes or issues at the June 18 Status Conference before the undersigned, and yet apparently chose not to do so. (ECF No. 54.) Accordingly, the parties are hereby directed to, on or before August 23, 2024, meet and confer by person or by telephone, and make a genuine effort to resolve the dispute by determining the factors above. If genuine disputes remain after the parties have met and conferred, Plaintiff's counsel may renew its Motion.[2]

---

conclusory statement where the movant asserts he has fulfilled this requirement is insufficient. *See Prescient Partners, L.P. v. Fieldcrest Cannon, Inc*., No. 96 Civ. 7590, 1998 WL 67672, at *2 (S.D.N.Y. Feb. 18, 1998) (citing *U.S. Bankcorp Equip. Fin., Inc. v. Babylon Transit, Inc*. 270 F.R.D. 136, 140, (E.D.N.Y. 2010)); *Harris v. Target Corporation*, No. CA 17-0569-CG-MU, 2018 WL 6220109, at *1 (S.D. Ala. Aug. 30, 2018) ("Simply corresponding with opposing counsel is not considered a good-faith attempt to confer or have a conference to resolve discovery disputes."); *Antonis v. Elecs. for Imaging, Inc.*, No. CIV. 07-CV-163JL, 2008 WL 169955, at *1 (D.N.H. Jan. 16, 2008) (holding a serial reiteration of demands over email "probably does not meet the requirement that the parties confer in good faith about discovery issues before invoking judicial remedies."); *C.f. Kirschenman v. Auto-Owners Ins.*, 280 F.R.D. 474, 479 (D.S.D. 2012) (finding sustained communication itemizing the issues with particularity and explaining why those issues were disputed evinces a good-faith attempt to meet and confer). Plaintiff's Counsel is further cautioned that "[n]o motion to compel will be considered by the Court unless the meet and confer requirement of Rule 37(a)(1) is met[,]" and is directed to refrain from making any further discovery motions without complying with this requirement. *McLain v. Daniel N. Gordon, PC*, No. C09-5362BHS, 2010 WL 11685123, at *1 (W.D. Wash. June 29, 2010); *Velazquez-Perez v. Devs. Diversified Realty Corp*., 272 F.R.D. 310, 312 (D.P.R. 2011) ("The only thing that can be drawn from these communications is plaintiff's unwillingness to solve the dispute by threatening the defendant with filing a motion to compel if the documents requested were not produced."). "As a party to this lawsuit—indeed, the one who initiated it" the undersigned notes that "Plaintiff ha[s] an affirmative obligation to move the litigation forward and to engage in the meet-and-confer process in *good faith* with Defendants[.]" *Nasreen v. Capitol Petroleum Grp., LLC*, 340 F.R.D. 489, 495 (D.D.C. 2022).

[2] The Court further cautions both Counsel for Plaintiff and Counsel for Defendants to refrain from *ad hominem* attacks in papers and threats of motion practice against one another. *See Van Gundy v. Atlas Rare Coins, Inc.*, No. 23CV2072NJCJMW, 2023 WL 8622844, at *3 (E.D.N.Y. Dec. 13, 2023). "Most of us say things in our heads that we wouldn't say out loud. And most of us say things out loud that we wouldn't say in a court filing. But not everyone is blessed with the same filter or with the same willingness to use the brake pedal." *Porch v. Univ. of Illinois at Chicago*, No. 21-cv-3848, 2023 U.S. Dist. LEXIS 39619 (N.D. Ill. Mar. 9, 2023). Such an approach of using *ad hominem* attacks is not only beyond acceptable advocacy in this Court's eyes, but in fact fails to advance the parties' position or persuade the court in any way. Indeed, the personal attacks undermine the mudslinger's credibility in this Court's view.

17

## CONCLUSION

For the reasons stated herein, Plaintiff's Motion for a Protective Order (ECF No. 53) and Supplemental Motion (ECF No. 55) are **DENIED**. Plaintiff's Motion to Compel (ECF No. 57) is **DENIED**, *without prejudice and with leave to renew*. The parties are directed to meet and confer on the issue of outstanding discovery responses by August 23, 2024. If issues remain following the meet and confer, Plaintiff may renew its Motion. To the extent Plaintiff seeks sanctions against Defendants, Plaintiff is directed to make a formal motion in accordance with the undersigned's Individual Rules. Plaintiff is further advised that summary judgment motion practice may only be commenced upon completion of discovery. *See e.g.*, *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (quoting *Berger v. U.S.*, 87 F.3d 60, 65 (2d Cir. 1996) (alteration in original) ("[S]ummary judgment should only be granted 'if *after discovery*, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.'"). The end date for all fact discovery, **September 20, 2024**, otherwise remains in place. (ECF No. 50; Electronic Order dated April 9, 2024.) The parties are further directed to file a Joint Status Report on or before **September 6, 2024**, advising the Court on the status of discovery and what items remain. Following review of the September 6 Status Report, the undersigned will set remaining dates and deadlines in this case.

In light of this disposition, the status conference previously scheduled for August 13, 2024 is hereby cancelled.

Dated: Central Islip, New York
       August 12, 2024

                                            **S O  O R D E R E D:**
                                            /S/ *James M. Wicks*
                                              JAMES M. WICKS
                                         United States Magistrate Judge